

Cite as 2017 Ark. App. 194

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-16-1077

| | | |
|---|---|---|
| ANGELA GREENHILL | | **Opinion Delivered** March 29, 2017 |
| | APPELLANT | |
| | | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. 66JV-15-249] |
| V. | | |
| | | HONORABLE JIM D. SPEARS, JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES and MINOR CHILD | | |
| | APPELLEES | AFFIRMED |

**PHILLIP T. WHITEAKER, Judge**

Appellant Angela Greenhill appeals a Sebastian County Circuit Court order terminating her parental rights to her son, D.N. More specifically, she challenges both the trial court's findings of statutory grounds and its best-interest determination. We affirm.

I. *Facts and Procedural History*

In March 2015, Greenhill presented herself at Mercy Hospital for a suspected miscarriage. Greenhill brought D.N. to the hospital with her. As Greenhill and D.N. sat in the waiting room, Greenhill repeatedly fell asleep, resulting in D.N.'s being left unsupervised. Due to Greenhill's lack of supervision, another patient began taking care of the child. The other patient, who was there for a psychiatric evaluation, subsequently took D.N. with her to an exam room, making it necessary for security to retrieve him. Greenhill was asleep during the entire encounter. Eventually, Greenhill was admitted to a room where she continued to

be inattentive to D.N. She subsequently tested positive for benzodiazepines and opiates. Based upon this, the hospital notified the Department of Human Services (DHS) that Greenhill was impaired and that there were concerns regarding her ability to adequately supervise D.N. Greenhill then attempted to leave the hospital without notifying hospital staff. She was found in the hospital parking lot attempting to leave. Once again, she was not adequately supervising D.N. and was not aware that he had almost walked into traffic. Greenhill was arrested on outstanding warrants and for child endangerment. Upon Greenhill's arrest, DHS took D.N. into protective care and filed a dependency-neglect action with the circuit court.

On May 18, 2015, the court adjudicated D.N. dependent-neglected due to inadequate supervision. The court specifically found that Greenhill had been under the influence of prescription medication and had been impaired to the point that she had been unable to properly supervise D.N. The trial court set the goal of the case as reunification, ordered that DHS provide services to Greenhill, and directed that Greenhill comply with the orders of the court. Specifically, Greenhill was ordered to obtain and maintain stable and appropriate housing, income, and transportation; to complete parenting classes and visit regularly; to submit to random drug screens and hair-follicle testing at the request of DHS; to attend counseling until released and to take medication only as prescribed; and to complete a drug-and-alcohol assessment.

The court monitored Greenhill's compliance at review hearings throughout the proceedings. Initially, Greenhill followed the case plan in the areas of employment,

transportation, visitation, parenting classes, counseling, and drug-and-alcohol assessment. Additionally, she tested negative on her random drug screenings. In fact, Greenhill's compliance was sufficient to allow a trial placement to occur.

While Greenhill initially followed the case plan, she eventually fell out of compliance, and the trial placement was terminated. At the February 1, 2016 permanency-planning hearing, the court noted several areas of noncompliance. Greenhill lost her job and was not upfront with caseworkers as to when or why she was terminated; she was late on her rent and was relying on her boyfriend for financial assistance; she had not been to her court-ordered drug counseling for several months; and she had been seen at the emergency room on several occasions seeking prescription drugs for unnecessary reasons.

Subsequently, Greenhill's noncompliance continued its downward spiral. At a review hearing held on April 4, 2016, the trial court found that Greenhill had been involved in two domestic disputes—one involving her boyfriend; that she had failed to disclose ongoing domestic violence in her relationship with her boyfriend; that D.N. had witnessed the domestic violence between Greenhill and her boyfriend; and that D.N.'s behavior had deteriorated while he was in Greenhill's care. The court further found that Greenhill had tested positive for methamphetamine even though she denied the use. Based on this noncompliance, the trial court changed the goal of the plan to adoption and termination of parental rights.

DHS filed a petition for the termination of parental rights on May 25, 2016. DHS alleged the following grounds for termination: (1) twelve months out of care with failure to

SLIP OPINION

remedy; (2) subsequent other factors warranted termination, and (3) aggravating circumstances (i.e., that there was little likelihood that services to the family would result in reunification). After a hearing on the petition to terminate, the court entered an order terminating Greenhill's parental rights on all three grounds alleged in the petition. The court further found that D.N. was adoptable and that potential harm existed if he were returned to Greenhill's custody; thus, termination was in D.N.'s best interest. Greenhill appeals this determination, challenging the grounds for termination as well as the court's best-interest findings.

## II. *Standard of Review*

The rights of natural parents are not to be passed over lightly. The termination of parental rights is an extreme remedy and in derogation of the natural rights of parents. *Fox v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 666, 448 S.W.3d 735. As a result, there is a heavy burden placed on the party seeking to terminate the relationship. *Id.* However, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Smithee v. Ark. Dep't of Human Servs.*, 2015 Ark. 506, 471 S.W.3d 227. In order to terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground for termination exists and that termination is in the child's best interest. Ark. Code Ann. § 9-27-341(b)(3) (Repl. 2015). Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992).

Our standard of review in termination-of-parental-rights cases is well settled; we review these cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d

286 (2001). We will not reverse the trial court's rulings unless its findings are clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). In determining whether a finding is clearly erroneous, we give due deference to the opportunity of the circuit court to judge the credibility of witnesses. *Dinkins*, *supra*.

### III.   *Statutory Grounds*

Greenhill challenges all three statutory grounds for termination found by the trial court: the twelve-months-failure-to-remedy, the subsequent-other-factors, and the aggravated-circumstances grounds. However, only one ground must be proved to support termination. *Reid v. Ark. Dep't of Human Servs.*, 2011 Ark. 187, 380 S.W.3d 918. Because there was sufficient evidence to support the twelve-month-failure-to-remedy ground, her challenge fails.

The failure-to-remedy ground found at section 9-27-341(b)(3)(B)(i)*(a)* allows for termination of parental rights if the child has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve months, and despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent. Here, it is undisputed that D.N. was adjudicated dependent-neglected by the court and had remained out of Greenhill's custody for over twelve months. It is also undisputed that the conditions that caused D.N.'s removal were Greenhill's prescription-drug usage and her inability to properly supervise D.N. DHS provided services to correct Greenhill's drug problem, including inpatient and outpatient drug treatment and counseling, but Greenhill failed to make any real progress in addressing her substance-abuse issues. She initially denied

SLIP OPINION

that she suffered from drug addiction. When finally confronted with her drug-seeking behavior, Greenhill eventually agreed to treatment. However, the court found that Greenhill still failed to acknowledge the seriousness of her addiction to prescription medication. In support of its finding, the court noted that, even after completing a residential substance-abuse treatment program, she obtained a prescription for opiates for her kidney stones, believing she could "manage" her prescription-drug usage despite her addiction. The court simply did not believe Greenhill's subsequent assertions that she had since recognized and gained control of her addiction. Based on the above, we hold that the court did not clearly err in its finding.

IV. *Best Interest*

Greenhill also argues that the trial court erred in its best-interest analysis. In making a "best interest" determination, the circuit court is required to consider two factors: (1) the likelihood that the child will be adopted and (2) the potential of harm to the child if custody is returned to a parent. *Pine v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 781, 379 S.W.3d 703. Adoptability is not an essential element but is rather a factor that the circuit court must consider. *Tucker v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 430, 389 S.W.3d 1. Similarly, the potential harm to the child is a factor to be considered, but a specific potential harm does not have to be identified or proved by clear and convincing evidence. *Pine*, *supra*. The potential-harm analysis is to be conducted in broad terms. *Id*. It is the best-interest finding that must be supported by clear and convincing evidence. *Id*.

Greenhill first argues that DHS failed to provide sufficient proof of the likelihood of adoption. Greenhill argues that the only evidence of adoptability came from her former and

current caseworkers who stated that they did not see any barriers to adoption and who noted that D.N. was "bright," "loving," "adorable," and "cute as a button." She notes that the foster care system is full of children with those same characteristics who have not been adopted and that adoptability does not hinge on a child's appearance or ability to be loving. If this were the only evidence presented on adoptability, we might agree; it was not.

There was also evidence presented that D.N. had been placed in and benefited from his long-term placement in a foster home. Unfortunately, permanent placement did not materialize there. However, the caseworker was hopeful that his most recent placement would become permanent, and she was unaware of any behaviors or issues that would keep him from being adopted into the right home. A caseworker's testimony is sufficient to support an adoptability finding. *Barnes v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 618, ___ S.W.3d ___.

Finally, Greenhill argues that the trial court erred in finding that there would be potential harm in returning the child to her custody. However, there was ample evidence to support the trial court's finding in this regard. First, Greenhill had not sufficiently maintained sobriety for any significant length of time, and the court was not convinced that she fully understood the nature and extent of her addiction. Second, there was evidence that she had initially hidden the abusive nature of her relationship with her former boyfriend and that D.N. had been exposed to violence during his temporary placement with her. Third, there was evidence that D.N.'s behavior deteriorated while in Greenhill's care and that temporary placement with her ultimately had to be terminated. A court may consider past behavior as



a predictor of likely potential harm should the child be returned to the parent's care and custody. *Harbin v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 715, at 3, 451 S.W.3d 231, 233. Because there was sufficient evidence of both adoptability and potential harm, the trial court's best-interest finding is not clearly erroneous.

For the foregoing reasons, we affirm.

GRUBER, C.J., and VIRDEN, J., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.