2013 Ark.App. 249

**Kayla STEPHENS, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES and Minor Child, Appellees.**

**No. CA 12–1096.**

Court of Appeals of Arkansas.

April 17, 2013.

Deborah R. Sailings, Arkansas Public Defender Commission, for appellant.

Tabitha Baertels McNulty, County Legal Operations, for appellee.

Chrestman Group, PLLC, by: Keith Chrestman, attorney ad litem for minor child.

DAVID M. GLOVER, Judge.

Kayla Stephens appeals from the termination of her parental rights to her daughter, J.S. (D.O.B.12–1–2009),[1] challenging the sufficiency of the evidence supporting the termination. We affirm.

## Background

Kayla was arrested on January 26, 2011, on charges of possession of methamphetamine with intent to deliver and for child endangerment due to the presence of methamphetamine in the home. DHS was called to assist with Kayla's child, J.S., who was approximately one year old at the time. DHS exercised a seventy-two-hour hold, removing J.S. from Kayla's custody, and then obtained an ex parte order for emergency custody on January 31, 2011. The probable-cause hearing was held on February 3, 2011. Kayla had been released from jail by then, but she did not attend the hearing and her whereabouts were not known. At the adjudication hearing on March 2, 2011, the trial court found J.S. to be dependent-neglected based on Kayla's methamphetamine use and child endangerment. Jeremy Steven Long was determined to be the child's father, and he stated that he believed he was eligible for membership in the Choctaw Indian Tribe. The trial court ordered him to provide evidence of that membership, and DHS was ordered to give notice under the Indian Child Welfare Act (ICWA).

The original goal of the case was reunification. Following a July 27, 2011 review hearing, that goal was left in place, but Kayla was found to be in minimal compliance, and the father was determined to be

---

1. Jeremy Steven Long, J.S.'s biological father, does not appeal the termination of his parental rights.

completely non-compliant. Custody of J.S. was placed with Kayla's cousin, Jennifer Anderson, by agreed order entered October 28, 2011.

On December 14, 2011, a permanency-planning hearing was held, and the goal of the case was changed to adoption. The trial court found that Kayla had failed to comply with the case plan and court orders, and that she had recently been sentenced to two years in the Arkansas Department of Correction. Moreover, prior to her conviction, Kayla had failed to obtain stable or appropriate housing, employment, income, or transportation. She had also failed to complete parenting classes and drug treatment.

The termination hearing was held on May 9, 2012. At that hearing, Kayla testified that she had been released from prison on February 27, 2012, and would be on parole until October 26, 2013. She stated that she had moved into an apartment a week prior to the hearing. She explained that she had been a daily meth user for about a year but that she had not used any meth since she entered prison in October 2011. She acknowledged that she had undergone a drug-and-alcohol assessment that recommended she complete residential treatment, but that she had failed to do so. Neither did she attend any twelve-step programs while she was in prison. An additional assessment recommended that she undergo an intensive outpatient-treatment program. She attended the first session of a sixteen-week treatment program on the day before the termination hearing. She had attended two NA/AA meetings (March 14 and March 16) at the time of the hearing.

Kayla testified that she currently had a home and a job, but no groceries and no driver's license. Her license had been suspended, and she was relying upon her father for transportation. She acknowledged that her first attempt to stop using meth, which was motivated by the removal of J.S. from her custody, had not lasted, and she relapsed. She also acknowledged that there had been a two-week period during which she had not notified her caseworker that she had been released from jail, and she had used marijuana and methamphetamine. She stated that J.S. entered foster care in January 2011; that she (Kayla) would stay clean for a period of time but then return to using meth; and that she occasionally missed visits with J.S. but tried to be regular in visiting. She said that the last time she had seen J.S. was around October 15; she had not taken advantage of two opportunities to see J.S. prior to her incarceration. Kayla acknowledged that prior to her arrest and J.S.'s removal, she had exposed J.S. to significant drug use.

Jennifer Marsh, Kayla's caseworker, testified about the services DHS had offered to Kayla. She explained that Kayla had failed to complete any services before she went to prison on October 31, 2011, which was nine months after J.S. was removed from her custody; that she did not begin to work on her case plan until the goal was changed to adoption at the permanency-planning hearing in late February 2012; that she finished parenting classes seven days prior to the termination hearing; that she completed a drug-and-alcohol assessment two months prior to the termination hearing; and that she had entered outpatient drug treatment twelve days prior to the termination hearing. Marsh explained that DHS was recommending termination of Kayla's parental rights and adoption for J.S. She testified that Kayla's history of drug use raised concerns about J.S.'s safety and that Kayla had not been out of prison long enough to demonstrate that she could remain drug free. She testified that J.S. was adoptable and that adoption

was in her best interest, with relatives willing to adopt her.

Although the parties stipulated that the child's father had never produced the ordered evidence of the child's eligibility for membership in the Choctaw Indian Tribe, Karen Hawkins, a qualified ICWA expert, testified at the hearing nevertheless and stated that DHS had provided services to the family and was in compliance with ICWA; that she recommended termination of parental rights; and that from the information she had been provided, it was her opinion that J.S. would be at serious risk of harm if she were returned to Kayla. She stated that she based her opinion on the length of time J.S. had been in foster care, the length of time J.S. had been without visitation with Kayla, and Kayla's lack of effort prior to her incarceration. She stated that she was concerned about Kayla having a relapse and that Kayla had only been out of jail for two and a half months at the time of the termination hearing.

At the conclusion of the termination hearing, the trial court expressed concern that Kayla had returned to using drugs after she had been arrested and J.S. had been removed from her custody. It noted that J.S. had only lived with Kayla for thirteen months and that she had lived with Jennifer Anderson for at least fifteen months at the time of the hearing. Even though the child's father had not produced the ordered evidence of eligibility for Choctaw membership, the trial court utilized the higher evidentiary standard of proof beyond a reasonable doubt, which is required under the Indian Child Welfare Act, 25 U.S.C. §§ 1901 to 1963 (2010). The trial court found that DHS had used reasonable and active efforts to rehabilitate Kayla and prevent the dissolution of an Indian family; that DHS had complied with ICWA requirements; and that DHS

had demonstrated the likeliness of serious emotional harm if returned to the parent. In addition, the trial court found that J.S. was adoptable and that termination was in her best interest.

In this case, J.S.'s possible eligibility for membership in an Indian tribe was injected into the case, but never established. Yet, an Indian Child Welfare Act expert testified at the hearing, and the trial court employed the higher burden of proof required under that act, i.e., beyond a reasonable doubt, rather than the clear and convincing evidence standard of the Arkansas Juvenile Code. That approach was not challenged at trial.

## Discussion

■ Kayla contends that there was not sufficient evidence to support the trial court's finding that returning custody of J.S. to her would likely result in serious emotional or physical damage to J.S. under the Indian Child Welfare Act standard. Encompassed within this argument, she further contends that she should have received additional time to achieve the goals necessary for reunification with J.S. We disagree with both contentions.

As we explained previously and in *Philpott v. Arkansas Department of Human Services,* 2011 Ark. App. 572, at 6, 2011 WL 4477860, the Indian Child Welfare Act of 1978 (ICWA) imposes an additional requirement for the termination of parental rights, beyond those required under our Juvenile Code:

No termination of parental rights may be ordered in such proceeding in the absence of a *determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.*

25 U.S.C. § 1912(f). (Emphasis added.) It is this determination by the trial court that Kayla challenges.

Moreover, a trial court may extend the time for reunification, but only when the parent is complying with the case plan and the court's orders and making significant and measurable progress toward the reunification goal; moreover, reunification must be expected to occur within a time frame consistent with the child's developmental needs. Ark.Code Ann. § 9–27–338 (Supp.2011). It is the parent's burden to demonstrate that he or she is engaged in a genuine, sustainable investment in completing the requirements of the case plan and following the court's orders to be able to retain reunification as the permanency goal. *Id.*

Here, it is undisputed that Kayla had a history of drug addiction, and that J.S. was exposed to that addiction and its surrounding environs. Kayla did not become serious about rehabilitation until after she had been incarcerated and the goal of the case had been changed from reunification to adoption, which was nine months after J.S. was removed from her custody. At the time of the termination hearing, Kayla had completed parenting classes just one week before; she had completed only one of sixteen classes of a drug-rehabilitation program; she had attended only two NA/AA meetings; and she had maintained only two-and-one-half months of sobriety. DHS, the qualified ICWA expert, and the attorney ad litem for J.S. all recommended termination of Kayla's parental rights.

In addition, despite Kayla's argument that she should have been allowed more time to achieve reunification, the fact of the matter is that she had already received extra time. At the time of the termination hearing, she had been given sixteen months to accomplish reunification, and yet she was still fifteen weeks away from completing her sixteen-week drug-rehabilitation program. J.S. has spent more of her young life in Jennifer Anderson's custody than in Kayla's. Kayla relies in part upon *Cranford v. Arkansas Department of Human Services*, 2011 Ark. App. 211, 378 S.W.3d 851, contending that it bears a remarkable resemblance to her situation, and that the parents in that case were allowed additional time. We do not agree that the situation in *Cranford* is remarkably comparable to the instant case. For example, in *Cranford*, there was no threat of harm to the child, there was testimony that continued contact with the parents was in the child's best interest, and the custodial grandparents wanted the parents to remain in the child's life. Those facts are not present here. As noted by DHS, trial courts are not equipped with crystal balls to see into the future. A parent's past conduct often provides a good indication of what the future might hold. *Matter of Adoption of K.M.C.*, 62 Ark.App. 95, 969 S.W.2d 197 (1998). We hold that there was sufficient evidence to support the trial court's termination of Kayla's parental rights.

Affirmed.

WALMSLEY and WHITEAKER, JJ., agree.