
SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV–15–271

| | |
|---|---|
| HEATHER KNUCKLES | **Opinion Delivered** SEPTEMBER 9, 2015 |
| APPELLANT | |
| | APPEAL FROM THE GREENE |
| V. | COUNTY CIRCUIT COURT |
| | [NO. JV-13-158] |
| | |
| ARKANSAS DEPARTMENT OF | HONORABLE BARBARA HALSEY, |
| HUMAN SERVICES and MINOR | JUDGE |
| CHILDREN | |
| APPELLEES | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Heather Knuckles appeals the January 2015 order of the Greene County Circuit Court that terminated her parental rights to her twins born in August 2012.[1] The children were taken into emergency custody by the Arkansas Department of Human Services (DHS) in August 2013, when the twins were one year of age. DHS filed a petition to terminate her parental rights in November 2014, which was granted in January 2015 following a hearing. Appellant filed a timely notice of appeal, and she argues that the trial court's decision to terminate her parental rights is clearly erroneous because there is insufficient evidence to support it. We disagree and affirm.

---

[1]The children's legal father, Victor Sanders, was a named party but did not appear for the majority of these proceedings. His parental rights were also terminated in this order, but he is not a party to this appeal.

SLIP OPINION

We review termination of parental rights cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341 (Supp. 2013); *M.T. v. Ark. Dep't of Human Servs.*, 58 Ark. App. 302, 952 S.W.2d 177 (1997). Clear and convincing evidence is that degree of proof that will produce in the fact finder a firm conviction as to the allegation sought to be established. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992). The appellate inquiry is whether the trial court's finding that the disputed fact was proven by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997); *Tucker v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 430, 389 S.W.3d 1; *Pine v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 781, 379 S.W.3d 703. Credibility determinations are left to the fact finder, here, the trial court. *Moiser v. Ark. Dep't of Human Servs.*, 95 Ark. App. 32, 233 S.W.3d 172 (2006).

The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for their child. *Camarillo-Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005); *Cole v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 203, 394 S.W.3d 318; *Tucker, supra.* A parent's

past behavior is often a good indicator of future behavior. *Stephens v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 249. Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Pine, supra.*

The standard of review in appeals of termination of parental rights is de novo, but we reverse a trial court's decision to terminate parental rights only when it is clearly erroneous. *Ullom v. Ark. Dep't of Human Servs.*, 340 Ark. 615, 12 S.W.3d 204 (2000); *Mitchell v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 715, 430 S.W.3d 851; *Brewer v. Ark. Dep't of Human Servs.*, 71 Ark. App. 364, 43 S.W.3d 196 (2001). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a distinct and firm conviction that a mistake was made. *Wade v. Ark. Dep't of Human Servs.*, 337 Ark. 353, 990 S.W.2d 509 (1999); *Hopkins v. Ark. Dep't of Human Servs.*, 79 Ark. App. 1, 83 S.W.3d 418 (2002).

In this case, the trial court found that two statutory grounds defined in Arkansas Code Annotated § 9-27-327(b)(3)(B) had been proven to support terminating appellant's parental rights, as alleged by DHS. Those grounds were (1) the out-of-custody for twelve months and failure-to-remedy ground, and (2) the "other factors" ground. Appellant argues that the statutory grounds were not proven because, although she suffered from "mental health and drug issues" at the commencement of this DHS case and suffered a relapse, those issues were being corrected, and she had a several-month track record to prove it. This, she argues, renders the termination order in error, warranting reversal.

3

Appellant further argues that termination of her parental rights is not in her children's best interest because she presents no potential harm to them. By statute, in the best–interest inquiry, the trial court must consider the potential harm to the children in returning the children to the parent, as stated in Arkansas Code Annotated section 9–27–341(b)(3)(A)(ii).[2] The potential harm inquiry must be viewed in a forward looking manner and in broad terms; there is no requirement that actual harm would result or that the trial court identify the potential-harm. *Hamman v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 295, 435 S.W.3d 495. Appellant contends that she was bonded to her children, that the children were bonded to her, and that she was making diligent efforts to maintain sobriety and a stable life, such that the provision of additional reunification services was warranted. Thus, she argues that there was insufficient evidence to support terminating her parental rights where it was not in the children's best interest. After conducting a de novo review of the evidence, we are not left with a distinct and firm conviction that a mistake was made. Thus, we affirm.

The evidence developed before the trial court showed that county law enforcement officers were called to appellant's home in August 2013 to conduct a welfare check on her and her children. Appellant refused to permit them into her home, and her refusal to cooperate led to her arrest for disorderly conduct. Appellant tested positive for methamphetamine. At her initial criminal appearance, appellant was ordered to undergo a mental evaluation.

---

[2] By statute, the trial court must also consider whether the children are adoptable, but appellant does not contest that this factor was met.

Appellant declared her intent to get out of jail, get her children, and "go to Red Rock." This led DHS to seek emergency custody, fearing that appellant would flee with her children.

The children were adjudicated dependent-neglected in October 2013. The goal was reunification of the family. Services were offered to appellant. Among other things, appellant was ordered to submit to a drug-and-alcohol assessment and follow any recommendations; to obtain and maintain clean, safe, and stable housing; and to obtain and maintain sufficient income to support herself and the children.

In an agreed review-hearing order filed in April 2014, the trial court accepted the parties' stipulation that the children remained in need of services and that return to the parent was not in the children's best interest. Appellant was noted to be compliant with the case plan at that point; DHS was found to have made reasonable efforts to provide services. Unsupervised visitation was to begin, and to increase if successful.

After a permanency-planning hearing conducted in August 2014, appellant was deemed to be noncompliant with the case plan and noncompliant with the trial court's orders. Although the children had begun a trial placement with their mother in April 2014, appellant tested positive for drugs (methamphetamine and cocaine) in May 2014 and continued to test positive thereafter, disrupting the children's trial placement with her. DHS noted that it had provided at least five opportunities for appellant to receive inpatient drug treatment, listing five drug-treatment facilities, but that appellant left each facility or was asked to leave after only a few days. The trial judge found that no substantial measurable progress was made in order to warrant the provision of three more months of DHS services. The goal was set as

SLIP OPINION

adoption, and the trial judge authorized DHS to file a petition for termination of parental rights.

DHS filed its petition to terminate parental rights in November 2014. The termination hearing was conducted in December 2014. Appellant had been residing at The Butterfly Ranch, another drug-treatment facility with a faith-based emphasis, since August 2014. Appellant admitted that she had been a drug addict for about five years. She could not have her children with her at The Butterfly Ranch dormitory, but she anticipated graduating the program in June 2015. Appellant had no source of income. Appellant wanted her case to remain open and for the trial court to permit her more time to complete the rehabilitation program. She said that she loved her children and was bonded to them and that the children were bonded to her.

A case worker testified that the two-year-old twins were adoptable, having no special needs. The children were residing in a "pre-adoptive" foster home. The attorney ad litem recommended that appellant's parental rights be terminated, primarily due to the amount of time the children had been and would continue to be out of their mother's custody.

The trial judge ruled from the bench, stating that appellant was finally "on the right track" but that her time had expired. The judge noted that the children had been out of her custody for well over a year, and even under the best-case scenario, she would not be able to take her children into her custody for another six months. This period of time, the trial judge said, was not reasonable when viewed from the children's perspective. A formal order followed, as did a timely notice of appeal.

We hold that the trial court did not clearly err in finding clear and convincing evidence of both statutory grounds and that it was in the children's best interest to terminate appellant's parental rights. The children had been out of their mother's custody for approximately a year and a half at the time of the termination, and even by appellant's own calculation, she would be unavailable and unable to regain custody of them for another six months. A child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Stephens v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 249, 427 S.W.3d 160; *Dozier v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 17, 372 S.W.3d 849. Because the trial court did not clearly err, we affirm.

Affirmed.

WHITEAKER and VAUGHT, JJ., agree.

*Suzanne Ritter Lumpkin*, Arkansas Public Defender Commission, for appellant.

*Tabitha B. McNulty*, Office of Policy & Legal Services, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.