

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-17-539

| | |
|---|---|
| | **Opinion Delivered** October 25, 2017 |
| ANNETTE HUGHES<br>APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, EIGHTH DIVISION |
| V. | [NO. 60JV-15-755] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br>APPELLEES | HONORABLE WILEY A. BRANTON, JR., JUDGE |
| | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Appellant Annette Hughes appeals the March 30, 2017 order of the Pulaski County Circuit Court that terminated her parental rights to her three children: son ZB born in November 2009, son CB born in March 2011, and daughter KB born in October 2012.[1] Appellant argues on appeal that the trial court's finding that it was in her children's best interest to terminate her parental rights is not supported by clear and convincing evidence. Thus, appellant argues, the trial court's termination order must be reversed. Her challenge specifically is that (1) the trial court failed to address the factor of ZB's adoptability,[2] and (2)

---

[1]None of the children's fathers are part of this appeal.

[2]Appellant does not challenge the trial court's consideration of CB and KB's adoptability.

SLIP OPINION

there lacked evidence to support a finding of potential harm to the children if returned to her custody.  We affirm.

We review termination-of-parental-rights cases de novo. *Mitchell v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 715, 430 S.W.3d 851. At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341 (Repl. 2015); *Dunn v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 34, 480 S.W.3d 186. Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992). The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 240 S.W.3d 626 (2006). Credibility determinations are left to the fact-finder. *Henson v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 225, 434 S.W.3d 371. In resolving the clearly-erroneous question, a high degree of deference is given to the trial court, as it is in a far superior position to observe the parties before it and to judge the credibility of the witnesses.  *Wallace v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 376, 524 S.W.3d 439.

SLIP OPINION

Appellant does not challenge the trial court's finding of statutory grounds. Her argument is focused solely on the best-interest finding. The best-interest finding must be based on a consideration of two factors: (1) the likelihood that, if parental rights are terminated, the juvenile will be adopted, and (2) the potential harm caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). Adoptability is not an essential element but is rather a factor that the trial court must consider. *Singleton v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 455, 468 S.W.3d 809. Testimony from a caseworker or an adoption specialist that the children are adoptable is sufficient. *See Martin v. Ark. Dep't of Human Servs.*, 2017 Ark. 115, 515 S.W.3d 599. A trial court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Id.* Potential harm must be viewed in a forward-looking manner and in broad terms, including the harm the child suffers from the lack of stability of a permanent home. *Vail v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 150, 486 S.W.3d 229; *Caldwell v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 144, 484 S.W.3d 719. A parent's past behavior is often a good indicator of future behavior. *Stephens v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 249, 427 S.W.3d 160. It is the "best interest" finding that must be supported by clear and convincing evidence after consideration of the foregoing factors. *Vail, supra.*

With these legal principles in mind, we examine the evidence presented to the trial court. The Arkansas Department of Human Services (DHS) sought emergency custody of the children in May 2015 after appellant had been arrested for maintaining a drug premises.

3

SLIP OPINION

Law enforcement executed a warrant at her home and found methamphetamine, cocaine, marijuana, and prescription pain pills, as well as firearms within reach of the children. The children were then ages five, four, and two. Appellant admitted being on probation for a theft charge at that time, and she tested positive for marijuana. KB tested positive for methamphetamine and cocaine. Appellant subsequently stipulated to there being probable cause to remove the children.

The children were adjudicated dependent-neglected following a July 2015 adjudication hearing. The trial court took judicial notice of an earlier juvenile case in which her parental rights had been involuntarily terminated to another child. The trial court found that appellant was selling drugs out of her home and that her drug activity put the children at serious risk of harm. The goal was family reunification. Appellant was ordered to submit to random drug-and-alcohol screens, submit to a psychological evaluation, complete parenting classes, follow any counseling and therapy recommendations, obtain and maintain stable housing and income, and clear up her legal issues.

The matter was reviewed in a permanency-planning hearing in October 2015. Appellant was ordered to continue her efforts to comply with the case plan and to "resolve her criminal charges," given that she had a jury trial scheduled for November 2015.

The matter was reviewed again at a permanency-plan hearing in April 2016. The trial court found it troubling that the children had been in DHS custody for almost a year, that if only appellant's parental rights were at issue it would be "a clear case for termination" of

SLIP OPINION

parental rights, that her drug and firearms convictions had resulted in her being in prison, and that she was yet again pregnant. The trial court was concerned that these very young children deserved permanency and a chance to succeed in life, but they had had nothing but instability. The trial court changed the goals to concurrent goals of appropriate relative placement or adoption, authorizing but not requiring the filing of a petition to terminate parental rights. Ryan Bryant was deemed to be the father of ZB, CB's biological father was unknown, and Kevin Bailey (also in prison) was deemed to be the father of KB. KB's paternal grandmother, Joyce Bailey (Kevin Bailey's mother), was identified as a possible placement for KB. Ryan Bryant, although not the biological father of CB, was a possible placement for both ZB and CB. DHS recommended working toward relative placements if those were subsequently determined to be suitable.

In June 2016, the attorney ad litem filed a petition to terminate all parental rights, asserting multiple statutory grounds. This petition was served on all parties at the June 2016 permanency-planning hearing. Appellant remained incarcerated, and no child's relative had yet been deemed an appropriate placement. Services were ordered to be provided to appellant, to the extent that they could be, given her incarceration. In this permanency-planning order, the trial court noted that there had been no real change for months; that it was "unimpressed" with ZB's father, who had only sparingly participated in counseling; and that he would have to participate meaningfully now if he was even to be considered as a placement. In January 2017, the attorney ad litem filed another petition to terminate all

parental rights, and it was heard in February 2017. Appellant acknowledged that her children had been home when the SWAT team executed the search warrant on her house and found drugs and firearms. She had a prior felony conviction, so she was not supposed to have firearms, and she acknowledged that she had been dealing drugs out of her house. She had been released from prison in November 2016, but she would be on parole for four years. Also, she had a new baby but no job and no home of her own. She was struggling with finding a job due to her status as a recently released felon, but she was working with a homeless shelter (Our House) to acquire transportation, housing, and a new job. She said she had quit a job at McDonald's and was about to start work at the Waffle Bakery. Nonetheless, appellant thought that after more than a year and a half out of her custody, the children should just be given back to her. She thought she had gained "common sense" and would be very protective of her children.

On cross-examination, the attorney ad litem confronted appellant with various photographs posted on her Facebook page of her and her sons "giving the finger." Although the photos were apparently taken and posted prior to the children coming into DHS custody, they nonetheless remained on her Facebook page. Despite smiling about it on the stand, appellant acknowledged that this was not good for a mother to do and was inappropriate.

DHS's adoption specialist, Jessica Warren, testified that she had taken particular information about these three children and placed it in a data-matching tool to determine if there were suitable adoptive-family matches. Warren listed her data as the age, race, and

SLIP OPINION

gender of these three children, along with other characteristics like ZB's current enrollment in counseling. She found 219 adoption resources, which was "a high number for a sibling group of three." Warren was "fairly confident that these children are adoptable. . . . [e]ven with the fact that ZB's been in counseling[.]"

The three children's foster mother testified to the children's differing characteristics, to their efforts to ensure ZB got counseling, and to the boys being in sports. A DHS supervisor testified that appellant had completed almost all of the services given to her but that she had not improved her ability to safely and consistently parent these three children. The supervisor stated that appellant had prior involvement with DHS that led to the termination of her parental rights to another child, that she traumatized these children by dealing drugs out of her home and in their presence, that her actions absented her from their lives, that she lacked stability when out of prison, and that the end result of all the services was that she remained an unfit parent.

At the conclusion of the hearing, the attorney ad litem and DHS argued that termination of parental rights as to all parents was the correct outcome. Appellant's attorney argued against termination of appellant's parental rights, stating that she "would like a chance to reunify" with these three children, even though the case had gone on nearly two years due to her own fault. Her attorney stated that not everyone has his or her own home, that DHS had not taken her new baby from her, that DHS should check out her current living situation to determine whether it was appropriate, and that there was no need to terminate her rights

when Mr. Bryant and Ms. Bailey might be appropriate placements.

The trial judge ultimately concluded that appellant's parental rights should be terminated on several grounds.[3] The trial court found by clear and convincing evidence that it was in the children's best interest to terminate appellant's parental rights. The trial court specifically found that CB and KB are adoptable children and highly likely to be adopted, noting the adoption specialist's testimony that there were numerous families available as data matches for the juveniles. The trial court found that the goal for ZB would continue to be placement with his father, Ryan Bryant, so Bryant's parental rights were not terminated. Bryant was found to have "made an effort to comply" and was the "most functional" of all the parents in this case, so the trial court wanted to give Bryant an opportunity to have ZB placed with him. The trial court "nevertheless feels it necessary to terminate [appellant's] rights as to [ZB] because [appellant] poses a toxic influence to all of her children. It is in the best interest of the children to terminate parental rights[.]" The trial court expounded on the lengthy history of this case, appellant's earlier termination of her parental rights to a child in 2006, appellant's conviction and incarceration on drug and firearms charges, and her questionable parenting in having her children "giving the finger to the camera in various poses" and maintaining those photos on Facebook. The trial court found "extreme risk of

---

[3]The grounds included the twelve-months-out-of-custody and failure-to-remedy ground; the subsequent-factors ground; and the aggravated-circumstances ground based on a prior involuntary termination as to a sibling and unlikelihood that further services would result in successful reunification.

SLIP OPINION

harm" to the children if returned to her custody, now almost two years since they had been in DHS's custody.

Notably, in ruling from the bench, the trial court stated that appellant was "a toxic individual," that no child should be in her custody, and that she should be cut off from the children. The trial court also stated that "these children are adoptable" and it was "highly likely that they could be adopted," but that even if Bryant actually acquired custody, termination remained in their best interest. The trial court recited that appellant, given her history, "would be harmful to their character development as they go into future life. Enough is enough."

Appellant first argues on appeal that the trial court failed to make a finding in the termination order as to the adoptability of ZB. Thus, the argument goes, the order must be reversed as to ZB. The children's attorney ad litem and DHS disagree, arguing that the trial court's decision is amply supported and should be affirmed. After applying the appropriate standard of review to this case, we disagree with appellant's arguments and affirm the trial court's decision.

The circuit court is not required to find by clear and convincing evidence that the children are adoptable but merely must consider the likelihood of adoption if parental rights are terminated. *Miller v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 239, 492 S.W.3d 113. While the termination order itself did not reflect an analysis of the adoptability of ZB in this case, on de novo review, it is apparent that the trial court did, in fact, give consideration to

SLIP OPINION

ZB's adoptability. In ruling from the bench, the trial court agreed that all three children were adoptable based on the adoption specialist's database search, but that even if ZB were not adopted but was ultimately placed with his biological father, termination remained in all three children's best interest given the potential harm that appellant posed to her children. We do not require "magic words" to be placed in a termination order. Instead, we determine whether the trial court performed its statutory duty of to consider the likelihood of adoption if parental rights are terminated when making a finding of the child's best interest. *See Singleton v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 455, 468 S.W.3d 809. On de novo review of this record, we are firmly convinced that the trial court gave consideration to the likelihood that ZB would be adopted. Adoptability is not an essential element of proof, and reversing on this point in this case would be the epitome of placing form over substance. *Smith v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 753, 431 S.W.3d 364. DHS presented adequate evidence regarding the adoptability of all three children. The court believed that these children were adoptable and that regardless of adoptability, appellant should be cut off from any access to her children. *See id.* We are to view this appeal in light of one of the primary purposes of termination, which is "to provide permanency in a juvenile's life in all instances in which the return of a juvenile to the family home is contrary to the juvenile's health, safety, or welfare and it appears from the evidence that a return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective." Ark. Code Ann. § 9–27–341(a)(3). Because the record demonstrates that the

SLIP OPINION

court considered the likelihood of adoption of all three children as part of its best-interest analysis, we reject appellant's argument.

Appellant's second point on appeal is that, as to all three children, there was insufficient evidence on which the trial court could find potential harm in returning them to their mother. She acknowledges that the circumstances of their being taken into DHS's emergency custody were serious and caused the children trauma, but she asserts that she had made progress and was not "toxic" to the children by the end of the case. We disagree. The trial court noted the numerous ways in which appellant had failed to gain the stability that these children needed. She exposed them to serious criminal behavior that led to her incarceration; one child tested positive for two drugs; she failed to acquire stable, appropriate housing for her children upon release from prison; at the time of the termination hearing, she had quit one job and had not begun another job, so she had no income; she had no transportation of her own; she had consistently shown lack of good judgment despite completion of many services. Potential harm is necessarily forward looking and is considered in broad terms, including the harm the child suffers from the lack of stability of a permanent home. *Vail*, *supra*. A parent's past behavior is often a good indicator of future behavior. *Stephens*, *supra*. A parent has an affirmative duty to protect his or her children from harm. *Vasquez v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 575, 337 S.W.3d 552. Given the unchallenged statutory grounds that supported termination of her parental rights, and given the trial court's clear consideration of potential harm to these children who had been waiting for safety and stability

SLIP OPINION

for approximately two years, we reject appellant's argument.

Affirmed.

VIRDEN and BROWN, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by:  *Keith L. Chrestman*, attorney ad litem for minor children.