Cite as 2019 Ark. App. 425

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-19-442

| | |
|---|---|
| BETHANY COOPER<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered:** October 2, 2019<br><br>APPEAL FROM THE CLEBURNE COUNTY CIRCUIT COURT [NO. 12JV-17-10]<br><br>HONORABLE LEE WISDOM HARROD, JUDGE<br><br>AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Bethany Cooper appeals the Cleburne County Circuit Court order terminating her parental rights to her children, A.C. (1/16/04), S.C. (11/16/05), and K.C. (6/19/07). On appeal, Bethany argues that the circuit court erred by finding that it was in the children's best interest to terminate her parental rights. We affirm.

On May 3, 2016, the Arkansas Department of Human Services (DHS) filed a petition for an ex parte emergency order for protection of A.C., S.C., and K.C., and it listed Bethany as their noncustodial mother. In the affidavit attached to the petition, DHS stated that the children were living with their father, Johnny Cooper, and their stepmother, Jessica Cooper, and that Johnny and Jessica had domestic-violence and alcohol-consumption issues. DHS proposed a protection plan, which Johnny and Jessica had agreed to. The court entered an ex parte order for protection on May 6. On June 20, the court entered a probable-cause

order. The court noted that Bethany was not present and that she had previously lost custody of the children.

On July 20, the court adjudicated the children dependent-neglected because of inadequate supervision and parental unfitness due to the issues between Johnny and Jessica. Bethany was not present at the hearing.

On October 26, the court held a review hearing, and Bethany appeared. The court found that Bethany had housing and employment but had not maintained regular contact with DHS and had not visited the children regularly. The court noted that Bethany had tested positive for methamphetamine and MDMA that day, but it granted her supervised visitation.

On November 22, DHS filed a petition for emergency custody and dependency-neglect. DHS alleged that Johnny had been arrested for driving while intoxicated and domestic battery. The court entered an ex parte order for emergency custody on November 23, and on December 6, the court entered an order finding probable cause for the emergency custody.

On March 8, 2017, the court held a review hearing. The court noted that Bethany did not appear for the hearing but found that the parties had agreed not to hold a second adjudication hearing. The court found that Bethany had been substantially compliant with the case plan. The court noted that DHS indicated it was close to a trial home placement with Bethany.

The court held a review hearing on June 9. The court found that Bethany was substantially compliant and had completed inpatient drug treatment and attended mental-

health counseling. On September 20, the court held a review hearing and found that Bethany had employment and housing. However, the court noted that she had failed a hair-follicle screening in June and that she had been recommended for additional inpatient drug treatment. The court appointed counsel to represent Bethany.

On November 17, the court held a permanency-planning hearing. The court changed the goal of the case to adoption and found that Bethany had not been compliant with the case plan. Specifically, the court noted that after failing the hair-follicle screening, Bethany had tested positive on urine drug screenings. The court further noted she had been arrested but had been released on October 30.

On January 23, 2018, DHS filed a petition to terminate Bethany's parental rights. DHS alleged the failure-to-remedy,[1] subsequent-factors,[2] and aggravated-circumstances grounds.[3] The court held a termination hearing on July 30 and October 29, 2018.

Bethany testified that she had been married to Johnny from August 13, 2004, through 2012 or 2013; she could not recall the exact date of their divorce. She noted that the Independence County Circuit Court had awarded Johnny custody of the children in a dependency-neglect proceeding in August 2014.

Bethany testified that she had a job at Flash Market and that she had been employed there since February or March. She noted that she lived in a trailer on land owned by her grandmother. She stated that she had been arrested in February and April 2018 for failure

---

[1]Ark. Code Ann. § 9–27–341(b)(3)(B)(i)*(b)* (Supp. 2017).

[2]Ark. Code Ann. § 9–27–341(b)(3)(B)(vii)*(a)*.

[3] Ark. Code Ann. § 9–27–341(b)(3)(B)(ix)*(a)*.

3

to appear and failure to pay fines and that she currently had cases open in Izard and Cleburne Counties.

Bethany admitted that she previously had a problem with methamphetamine, but she had been clean for 232 days. She stated that she went to treatment and that she regularly attends faith-based alcoholics-anonymous and narcotics-anonymous meetings. She acknowledged that she had tested positive for tramadol throughout the case and that she did not always have a prescription for the drug. Bethany further acknowledged that she had most recently tested positive for methamphetamine in December 2017.

Miranda Moore, the family-service worker, testified that S.C. and K.C. are placed together but that A.C. is in a different placement. Specifically, A.C. is in a fictive-kin provisional foster home with his football coach, and S.C. and K.C. are in an area foster home. Moore stated that all the children are adoptable.

Moore testified that Bethany had housing and employment but that her house is inappropriate; she noted that the children's room had a strong smell of cat urine. She recognized that DHS services could help Bethany remedy the issues with the home, but she stated that Bethany's drug problem posed a risk of harm to the children. She referenced Bethany's positive drug screenings for methamphetamine and tramadol throughout the case and noted that the children had seen a glass pipe during a visitation. She explained that Bethany had unsupervised visits during the spring of 2017, but the visits stopped after she failed the hair-follicle screening in June. She further explained that Bethany tested positive for methamphetamine again in December 2017 but that she entered inpatient drug treatment. Moore said she believed Bethany uses drugs when she becomes overwhelmed.

During Moore's testimony, the court recessed and did not resume the hearing until October 29, 2018. On that day, Moore continued her testimony and explained that K.C. and S.C. had moved to another placement in the last month but that A.C. remained in the same home. She stated that A.C.'s placement is a potential long-term placement and that K.C. and S.C. could remain in their new placement as long as necessary.

As to Bethany, Moore stated that during the court's recess, she tested positive for methamphetamine and tramadol on October 1. Bethany also testified at the second hearing and admitted using methamphetamine since the last hearing. She denied using tramadol.

At the close of the evidence, the attorney ad litem informed the court that the children did not want their parents' rights terminated. However, the ad litem recommended termination because the children need stability.

On February 21, 2019, the court entered an order terminating Bethany's parental rights.[4] The court found that all the grounds pled in the petition supported termination. The court further found that Bethany lacked the capacity to remain permanently drug free and that the children would be at risk of harm if returned to her custody. The court also found that the children are adoptable. This appeal followed.

We review termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Dade v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 443, 503 S.W.3d 96. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a

---

[4]The court also terminated Johnny's parental rights. However, he is not a party to this appeal.

definite and firm conviction that a mistake has been made. *Id*. In determining whether a finding is clearly erroneous, we have noted that in matters involving the welfare of young children, we will give great weight to the circuit court's personal observations. *Jackson v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 440, 503 S.W.3d 122.

The termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Fox v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 666, 448 S.W.3d 735. As a result, a heavy burden is placed on the party seeking to terminate the relationship. *Id*. The termination of parental rights is a two-step process that requires the circuit court to find that the parent is unfit and that termination is in the best interest of the child. *T.J. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997); *Smith v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 753, 431 S.W.3d 364. The first step requires proof of one or more of the statutory grounds for termination. Ark. Code Ann. § 9-27-341(b)(3)(B). The second step requires consideration of whether the termination of parental rights is in the child's best interest. Ark. Code Ann. § 9-27-341(b)(3)(A).

On appeal, Bethany does not challenge the proof of the statutory grounds supporting termination. Instead, she argues that the circuit court erred in finding that termination of her parental rights was in the best interest of the children. She concedes that Moore's testimony satisfies the adoptability prong but argues that the court did not consider the children's sibling bond when determining their best interest. She further argues that there was insufficient evidence that the children would face a risk of harm if returned to her custody. She points out that she never harmed the children. She acknowledges her drug use

during the case but asserts that relapse is a common occurrence for people struggling to achieve sobriety.

The best-interest finding must be based on a consideration of two factors: (1) the likelihood that if parental rights are terminated the juvenile will be adopted and (2) the potential harm caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). A circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Id.* Potential harm must be viewed in a forward-looking manner and in broad terms, including the harm the child suffers from the lack of stability of a permanent home. *Vail v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 150, 486 S.W.3d 229. A parent's past behavior is often a good indicator of future behavior. *Stephens v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 249, 427 S.W.3d 160. It is the best-interest finding that must be supported by clear and convincing evidence after consideration of the foregoing factors. *Hughes v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 554, 530 S.W.3d 908.

In this case, we hold that the circuit court's best-interest finding was not clearly erroneous. The evidence showed that Bethany was unstable and had a drug problem. Bethany had been arrested on multiple occasions during the case, and despite receiving inpatient drug treatment, she continued to test positive for methamphetamine and tramadol intermittently throughout the case. Most significantly, she tested positive for methamphetamine in the interim between the two-day termination hearing. We have held that continued drug use demonstrates potential harm sufficient to support a best-interest finding. *Middleton v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 97, 572 S.W.3d 410.

7

Moreover, this is the second dependency-neglect case in which the children have been removed from Bethany's custody. As to Bethany's argument concerning the court's consideration of the children's sibling bond, the evidence showed that the children had already been placed in separate homes, that A.C.'s placement is a potential long-term placement, and that S.C. and K.C. could remain in their placement as long as necessary. The circuit court weighed this evidence in favor of termination, and we cannot say the circuit court erred in finding that termination was in the children's best interest.

Affirmed.

GLADWIN and WHITEAKER, JJ., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.