

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-15-464

| | |
|---|---|
| CRYSTAL WILSON AND ALAN ALLRED<br><br>APPELLANTS<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES, S.A., J.M., AND D.M.<br><br>APPELLEES | **Opinion Delivered** November 18, 2015<br><br>APPEAL FROM THE BRADLEY COUNTY CIRCUIT COURT [NO. JV-2013-46]<br><br>HONORABLE TERESA FRENCH, JUDGE<br><br>AFFIRMED |

**RITA W. GRUBER, Judge**

Appellants, Crystal Wilson and Alan Allred, appeal from an order of the Bradley County Circuit Court terminating their parental rights to their son, S.A., born March 3, 2013. Crystal also appeals from the circuit court's termination of her parental rights to her children J.M., born December 19, 2006, and D.M., born June 8, 2010. They contend on appeal that the evidence was insufficient to support the circuit court's decision with respect to both the court's statutory ground and its best-interest determinations. Alan also contends that the court abused its discretion in admitting hearsay testimony and in failing to appoint him counsel until the termination hearing. We affirm the circuit court's decision.

Crystal is the biological mother of S.A., J.M., and D.M. Alan was Crystal's live-in boyfriend and the biological father of S.A.[1] The Arkansas Department of Human Services

---

[1]Billy Joe Morgan is the father of J.M. and D.M. His rights were not terminated, and he was awarded permanent custody of J.M. and D.M.

SLIP OPINION

(DHS) took a seventy-two hour hold on S.A. on June 10, 2013, for issues related to domestic violence between Crystal and Alan. Although Alan disputed the reason for his actions—claiming he was trying to "kill" the truck's engine because it had gotten "hung up"—Alan had run alongside the family truck and shattered the passenger-side window while the children were in the back seat. On June 13, 2013, an ex parte order for emergency custody was entered placing all three children in the custody of DHS. On June 18, 2013, the court entered a supplemental ex parte order, placing D.M. in the temporary custody of his father, Billy. On June 26, 2013, the court entered a temporary custody order placing both D.M. and J.M. in Billy's custody.

On September 4, 2013, the court entered an adjudication and disposition order finding the children dependent-neglected and setting the goal as reunification. The court ordered Crystal to obtain and maintain stable, clean, and adequate housing; obtain and maintain stable employment; complete parenting classes; submit to random drug screens and test negative on all; complete a drug assessment and follow recommendations if any tests were positive for illegal drugs; attend and participate in individual counseling; and provide a one-year printout of prescription drugs. Alan was ordered to complete parenting classes, complete anger management, submit to random drug screens and test negative on all, complete a drug assessment and follow recommendations if any tests were positive for illegal drugs, and provide a one-year printout of prescription drugs.

On October 29, 2013, the court placed all three children on a trial placement with Crystal. Apparently, without DHS or court approval, Billy had placed J.M. and D.M. with

Crystal three weeks earlier. The court found that both Crystal and Alan had complied with the case plan and continued the goal of reunification with Crystal. A concurrent goal for J.M. and D.M. was permanent custody with Billy. A month later, on December 7, 2013, DHS received a call regarding Crystal and Alan and conducted an investigation. Crystal said that Alan had "snatched" S.A. out of her hands by the neck while she was sitting on the couch with S.A. Alan claimed that Crystal had threatened to stab him with a screwdriver and attempted to hit him with a bat while he was holding S.A. DHS placed an emergency hold on the children, and the court entered an order on December 11, 2013, again placing all three children in DHS custody. A review order was entered on April 9, 2014, in which the court continued the concurrent goals of reunification with Crystal and permanent custody of J.M. and D.M. with Billy.

In a permanency planning hearing in June 2014, a DHS worker testified that S.A. had been in a foster home and that J.M. and D.M. had been with Billy. She stated that Crystal had been compliant, but that she had not timely provided certain documents to DHS to enable them to get the counseling information. She also had not provided a printout of her medications. The worker stated that Alan had not provided certain documents that DHS had requested, had not completed his psychological evaluation or drug assessment, and did not feel he needed to attend counseling. She also said that there had been no domestic-violence counseling, which was the "real issue" that needed to be addressed. She recommended termination and that permanent custody of J.M. and D.M. be placed with Billy. The court granted permanent custody of J.M. and D.M. to Billy, entering a separate order in addition

to the permanency planning order. The court then found that Crystal had only partially completed the case plan because she had not completed inpatient or outpatient drug rehab, nor had she completed domestic-violence counseling. The court specifically ordered Crystal and Alan to "address the issue of domestic violence." The court's permanency planning order was entered on June 11, 2014.

On September 3, 2014, DHS filed a petition for termination, alleging that the children had been adjudicated dependent-neglected, had been out of the parents' custody for twelve months and, despite a meaningful effort by DHS to rehabilitate the parents and correct the conditions that caused removal, those conditions had not been remedied by the parents. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*) (Supp. 2015). DHS alleged that the children came into DHS custody due to domestic-violence issues with the parents, those issues were still ongoing, and no counseling to address the issues had been obtained. DHS stated that the court attempted to reunify the family but that the reunification failed in December 2013.

On November 6, 2014, at appellants' request, their counselor filed a letter with the court stating that they had been in couples' therapy for three weeks in October and had made marked progress. She said that they had admitted their mistakes, "processed the violence in their relationship," and worked on finding new ways to communicate.

On February 23, 2015, after a termination hearing in December 2014, the court entered findings and an order terminating Crystal's parental rights to all three of her children and terminating Alan's parental rights to S.A. Billy was awarded permanent custody of J.M. and D.M. In its findings, the court noted that the case began because of an incident of

4

domestic violence between Crystal and Alan in front of the children. The court found that testimony at the adjudication hearing suggested the violence had been ongoing before the incident that brought the children into DHS custody. Although appellants had initially made progress—such that the children were placed with Crystal in October 2013 for a trial placement—a domestic-violence incident in December 2013 required DHS to again take custody of the children. The court found that, at a March 2014 review hearing, testimony indicated that both appellants were unemployed, that Crystal was noncompliant and had been at a women's shelter several times, and that local police had been called due to domestic disputes between them. The court then found that it was in the children's best interest to terminate Crystal's rights to J.M. and D.M. because of the potential harm if the children were returned to Crystal and Alan due to the repeated domestic violence between them.

In its termination order, the court found that DHS had proved by clear and convincing evidence that the children had remained out of their parents' custody in excess of 12 months, had been adjudicated by the court to be dependent-neglected, and despite meaningful efforts by the department to rehabilitate the parents and correct the conditions that caused removal, those conditions had not been remedied. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*). The court recounted the following evidence from the permanency planning order entered in June 2014. A DHS worker testified that Crystal was "doing things" in compliance with the plan but she was not timely. Also admitted at that hearing was Crystal's psychological evaluation, which indicated that she had been arrested on drug charges and had a failure-to-appear warrant issued for her in June, that she had been charged with

endangering the welfare of a minor, and that she and Alan had attended relationship counseling but denied that it had been helpful. The court also stated that, at the time of the permanency planning hearing, Alan had not provided his medical documents, completed his psychological evaluation, completed his drug assessment, or attended domestic-violence counseling. Finally, the court found the following from Billy's testimony at the termination hearing:

> [Billy] testified at the last visit that his daughter had with her mother, Ms. Crystal Wilson, her mother told her the bruises on her were put there by Mr. Allen Allred and put her finger up to her lips to tell her not to tell anyone. This proves that there are still ongoing domestic issues. The mother told [Billy] that [Alan] would not let her come to any of the school functions or make some of the visits which was extremely upsetting to her daughter, [J.M.].

The court also found by clear and convincing evidence that it was in the best interest of all three children for the parental rights of Crystal and Alan to be terminated. It made the following specific findings.

> [J.M. and D.M.] have been with their dad and the court can terminate the rights of one parent and not the other parent if it is in the best interest of the juveniles and there is potential harm which would be caused to the children if returned to the mother and step-dad. This Court finds that there is potential harm which would occur due to the repeated domestic violence between Crystal Wilson and Mr. Alan Allred that is extremely violent; knocking out the mother, kicking the doors in, chasing with a screwdriver and a bat, knocking out the window of a truck, and picking up a child by its neck to name a few of the acts, most of which occurred in front of the children. The court hereby terminates the mother, Crystal Wilson's parental rights to [J.M. and D.M.].
> In making this finding, the court specifically considered (A) the likelihood that the juvenile [S.A.] will be adopted if the termination petition is granted, specifically the testimony of the worker who stated that [S.A.] had matches for adoption on the preliminary search and his age in favor of adoption and there are no factors existing that inhibits him from being adopted; (B) the potential harm on the health and safety of the juveniles caused by returning the juveniles to the custody of the parents. As to [S.A.] that would be Crystal Wilson and Alan Allred. As to [J.M. and S.M.] that

would be the mother Crystal Wilson.

Finally, the court granted permanent custody of J.M. and D.M. to their father, Billy.

We review termination-of-parental-rights cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 213, 40 S.W.3d 286, 292 (2001). At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341. In making a "best interest" determination, the trial court is required to consider two factors: (1) the likelihood that the child will be adopted, and (2) the potential of harm to the child if custody is returned to a parent. *Smith v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 753, at 4, 431 S.W.3d 364, 367. The appellate inquiry is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). Credibility determinations are left to the fact-finder, here the trial court. *Henson v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 225, at 6, 434 S.W.3d 371, 375.

The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Ford v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 226, at 3, 434 S.W.3d 378, 381.



Finally, a parent's past behavior is often a good indicator of future behavior. *Id.*; *Stephens v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 249, at 8, 427 S.W.3d 160, 164.

## I. *Crystal's Points on Appeal*

For her first point on appeal, Crystal contends that DHS failed to demonstrate that termination was in the children's best interest. Specifically, with regard to J.M. and D.M., Crystal contends that they achieved permanency, a principal goal of termination, before the termination petition was ever filed because they were in the permanent custody of their father, Billy. She argues that it was unnecessary to employ the extreme measure of termination where the evidence did not demonstrate that it was necessary to achieve permanency or that it was in their best interest. She cites *Caldwell v. Arkansas Department of Human Services*, 2010 Ark. App. 102, in which we reversed the circuit court's termination of the father's rights where the children remained in the mother's custody. She also alleges that the potential harm found by the court was based on incidents that occurred more than a year before the termination hearing, referring to the domestic incident that started the case and the event that occurred in December 2013, causing DHS to remove the children from their trial placement with Crystal. She contends that these events occurred before she received domestic-violence counseling, which she claims was never provided by DHS. With regard to S.A., Crystal argues that she was in full compliance with the case plan by the time of the permanency planning hearing in June 2014, six months before the termination hearing. She also cites testimony from her therapist that the therapist did not have any concerns were the children to be returned to Crystal's home.

SLIP OPINION

We turn to our decision in *Caldwell*, the case cited by Crystal in her appellate brief. In that case, we reversed the circuit court's order terminating the father's parental rights because we determined that its best-interest finding was clearly erroneous. 2010 Ark. App. 102. We noted that the child was not being placed for adoption because she was in her mother's custody and therefore that termination of the father's rights would not serve to achieve permanency. *Id.* We also noted that there was no evidence that the father physically abused the child. *Id.* Finally, and critical to the decision in that case, we recognized that termination of the father's rights endangered the child's relationship with her paternal grandmother, which the circuit court had found to be the most stable influence in the child's life. *Id.* Our decision was based on particular facts in that case, which are not the facts before us in this case. Unlike the circuit court in *Caldwell*, here, the court did find that J.M. and D.M. would be harmed if placed in the custody of Crystal and Alan and that they had been harmed by the ongoing domestic violence between them. Moreover, unlike in *Caldwell*, there was no evidence in this case that the children had any relationship at all with Crystal's parents or other family members that might be endangered by the termination of Crystal's parental rights. We have held that a court may terminate the parental rights of only one parent, even when the parents are still married. *Ross v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 660, at 4, 378 S.W.3d 253, 255.

Furthermore, although Crystal argues that she was in compliance with the case plan after the permanency planning hearing and before the termination hearing in December 2014, we note that she did not begin domestic-violence counseling until October 2014. The

permanency planning order entered in June 2014 specifically mentioned that domestic violence was the real issue, and the court ordered the parties to address the issue. The court was concerned about the history of domestic violence and the parties' failure to address it until the end of the case. Moreover, the court shall rely upon the record of the parent's compliance in the entire dependency neglect case, and evidence presented at the termination hearing that the parent made overtures toward participating in the case plan is an insufficient reason to not terminate parental rights. Ark. Code Ann. § 9-27-341(a)(4)(A) & (B); *see also Camarillo-Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005) (affirming termination of parental rights in spite of last-minute compliance with case plan). Finally, although appellants' therapist testified that it would be okay for the children to return home, she admitted that she had only provided couples' counseling since October 2014, that she had never met the children or seen appellants' home, and that she did not have the experience in this case to make a professional opinion regarding whether it would be in the best interest of the children to terminate appellants' parental rights. We give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Osborne v. Ark. Dep't of Human Servs.*, 98 Ark. App. 129, 134, 252 S.W.3d 138, 142 (2007). Additionally, we have noted that in matters involving the welfare of young children, we will give great weight to the trial judge's personal observations. *Johnson v. Ark. Dep't of Human Servs.*, 78 Ark. App. 112, 119, 82 S.W.3d 183, 187 (2002). We see no clear error in the circuit court's finding of best interest.

For her second point on appeal, Crystal contends that the evidence was insufficient to support the failure-to-remedy ground. She argues that DHS did not offer "meaningful

efforts" to correct the domestic violence and that, in spite of DHS's failure, she did remedy the cause of removal. The condition that caused the children to be removed was domestic violence. Crystal claims that DHS never provided domestic-violence counseling or offered a referral for that service. She alleges that she and Alan, independently of DHS, obtained domestic-violence counseling in October 2014 to address the issue and that their therapist testified they had both made significant improvement. Because DHS did not offer the appropriate services to address the issue that caused removal, she alleges that the court's finding of meaningful efforts is clearly erroneous. Again, we note that credibility is an issue for the circuit court. Appellants did not seek domestic-violence counseling until after the petition for termination was filed, and only two months before the termination hearing, which was 18 months after the children were removed from appellants' custody. And although the DHS worker initially testified that DHS had not made a referral for domestic-violence counseling, she later testified that she had, in fact, made a referral for anger management, individual counseling, and domestic-violence counseling in March 2014. The worker stated that Crystal had determined that individual counseling was a priority for her at that time. Credibility is for the circuit court. We see no clear error in the court's findings.

## II. *Alan's Points on Appeal*

For his first point on appeal, Alan makes the same argument that was made by Crystal regarding the court's finding of the failure-to-remedy ground for termination. He argues that DHS did not offer "meaningful efforts" to correct the domestic violence and that, in spite of DHS's failure, he and Crystal did remedy the cause of removal. He claims that they

11

retained a domestic-violence therapist on their own, apart from DHS, have attended regularly, and are no longer fighting but getting along well. He points to the therapist's testimony that he has made substantial progress. For the reasons stated above regarding Crystal, we reject Alan's argument and hold that the circuit court did not clearly err in finding that DHS proved the failure-to-remedy ground by clear and convincing evidence.

Secondly, Alan claims that the court abused its discretion in admitting Billy's hearsay testimony. Billy testified that J.M. told him that Crystal told J.M. that Alan had caused the bruising on Crystal. The court allowed Billy's testimony over Alan's objection under Rule 801(d)(2)(i) of the Arkansas Rules of Evidence, as not being hearsay because it was an admission by a party opponent. Although we agree that the statement of J.M. was not an admission by a party opponent, we will not reverse a circuit court's ruling on admissibility of evidence absent a manifest abuse of discretion. *Olivares v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 94, at 1. Further, a mere showing that the trial court erroneously admitted evidence will not support a reversal absent a showing of prejudice. *Id.* Without any showing of prejudice, any judicial error as to the admissibility of evidence is harmless error and cannot be grounds for disturbing a circuit court's order. *Id.* at 2; Ark. R. Civ. P. 61 (2015). In this case, the court's termination order did not rely on this evidence to support its best-interest finding. In explaining the court's potential-harm consideration, which included its fear of continued domestic violence, the court listed the following: "This Court finds that there is potential harm which would occur due to the repeated domestic violence between Crystal Wilson and Mr. Alan Allred that is extremely violent; knocking out the mother, kicking the

doors in, chasing with a screwdriver and a bat, knocking out the window of a truck, and picking up a child by its neck to name a few of the acts, most of which occurred in front of the children." The court did not mention J.M.'s statement to Billy about Crystal's bruises. If anything, this evidence was merely cumulative. *See, e.g.*, *Tadlock v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 821, 373 S.W.3d 361. We decline to reverse on this point.

For his next argument, Alan contends that the evidence does not support the court's finding of potential harm if S.A. were returned to him. He argues that he had substantially complied with the case plan, that visitation with S.A. had gone well, and that there would be little harm in affording him more time to satisfy the court's concern regarding domestic violence. Potential harm to the child is a factor to be considered, but a specific potential harm does not have to be identified or proved by clear and convincing evidence. *Pine v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 781, at 11, 379 S.W.3d 703, 709. The potential-harm analysis is to be conducted in broad terms. *Id.* It is the "best interest" finding that must be supported by clear and convincing evidence. *Schaible v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 541, at 9, 444 S.W.3d 366, 372. In this case, the court clearly considered the potential harm to S.A. if he were to be returned to Crystal and Alan. And the court specifically stated that it was concerned about the continuing domestic violence in front of and to S.A. Although appellants had attended several counseling sessions to address the issue at the time of the hearing, the court was not obligated to grant them more time. They had well over a year to address the issue and did not begin counseling until two months before the termination hearing. A child's need for permanency and stability may override a parent's

request for additional time to improve the parent's circumstances. *Dozier v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 17, at 9, 372 S.W.3d 849, 854. Finally, a parent's past behavior is often a good indicator of future behavior. *Stephens*, 2013 Ark. App. 249, at 8, 427 S.W.3d at 164. The court's finding of best interest is not clearly erroneous.

For his last point on appeal, Alan contends that the termination decision should be reversed because he was not appointed counsel until the termination hearing. Alan was represented by appointed counsel at the termination hearing and had retained his own counsel earlier in the case. At no time did he ask for the petition to be dismissed because he had not previously been represented by appointed counsel. Because he failed to make this argument in the circuit court, he has waived it and is barred from making the argument to us. The general rule is that an issue must be raised and ruled on by the circuit court in order to be preserved for appeal. *Williams v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 171, at 5, 458 S.W.3d 271, 274.

Affirmed.

VAUGHT and BROWN, JJ., agree.

*Tabitha B. McNulty*, Arkansas Public Defender Commission, for appellant Crystal Wilson.

*Dustin Standridge*, for appellant Alan Allred.

*Mischa K. Martin*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.