BART F. VIRDEN, Judge
Kevin Phillips appeals the Sebastian County Circuit Court's decision adjudicating his son, IP (born 02/20/09), dependent-neglected based on physical abuse and parental unfitness. Phillips presents several arguments on appeal. First, Phillips challenges the sufficiency of the evidence to support the circuit court's finding that he caused IP's bruises. Second, alternatively, Phillips contends that the Arkansas Department of Human Services ("the Department") did not present evidence that the corporal punishment administered by him was not subject to the parent-guardian exception and that the circuit court failed to address this issue. Third, Phillips argues that the circuit court improperly excluded a previous Department administrative opinion overturning a true finding against Phillips of substance misuse and sexual abuse. Fourth, Phillips asserts that the circuit court erroneously denied his motion to modify, vacate, and reopen the record. We affirm.
I. Factual History
On August 29, 2017, the Department filed a petition for emergency custody and dependency-neglect regarding IP. The attached affidavit set forth the following relevant facts to support the petition. On August 23, 2017, the Department received a hotline call describing a "huge bruise on the back of [IP's] leg" that was "bigger than a grapefruit and almost looks like a square area. The bruise is brown, red, and yellow." The affidavit set forth that when IP was asked about the bruise, he responded that if he gets in trouble, his father spanks him on his buttocks with a brown leather belt or a foot-long rectangular wooden paddle with holes in it, and he stated that his father sometimes hit him on the head with an open hand. IP stated that these spankings occur about twice a week "or something like that" and that he always has bruises after he is spanked.
The affidavit sets forth that Phillips told family service worker Bobbie Gorman that he spanks IP with a belt or a paddle when IP gets in trouble at school and when he is defiant. Phillips stated to Gorman that he had spanked IP two days before the hotline report and that before that last spanking, it had been two weeks since he had spanked IP. Gorman showed Phillips photographs of bruises on IP's buttocks and legs, and he responded that he "would have to admit that then" as to the bruising on IP's bottom. Regarding the bruises on IP's legs, Phillips stated that "I'm not saying I did or didn't do it." Phillips agreed to a protection plan that entailed refraining from corporal punishment, and he agreed to attend anger-management *502 classes and parenting-without-violence classes.
The affidavit also contained statements from "school personnel" who told Gorman that IP had stated that his father spanked him with a paddle that Monday. She told Gorman that she was afraid of what IP would face at home when he got in trouble at school and that on August 24 and 25, IP had refused to talk "about anything that happened at home and was more defiant than he had been before, refusing to do work or talk to the counselors."
The affidavit also recounted the events of a team decision meeting ("TDM") held August 25. At the meeting, Phillips told family service workers that he would continue to corporally punish IP if he saw fit. Phillips again admitted that he had likely caused the bruises on IP's buttock, but that he believed IP got the other bruises during a recent float trip. During a break, Phillips made a phone call in which he was heard telling the person on the phone that the meeting was not going his way, and that if she did not hear from him in an hour, to "go ahead and do what she needs to do." Phillips became upset and stated that he did not agree to refrain from corporal punishment and that he did not need anger-management classes or any other Department services. Phillips was informed that the Department was taking an emergency hold on IP. Phillips refused to bring IP to the office or cooperate until law enforcement became involved. IP was located with a grandparent who brought IP into the Department office. The affidavit listed six prior instances of referrals citing abuse or neglect by Phillips. Five reports were unsubstantiated. One referral for sexual abuse and substance misuse had been found true, but the finding was later overturned on appeal.
The circuit court entered an ex parte order for emergency custody on August 29, 2018. The circuit court found that it was in IP's best interest to remove him from his father's custody and that removal was necessary to protect IP's health, safety, and welfare. The circuit court noted that along with the large bruise on his thigh, IP had bruises of different ages on his buttocks. In the order, the circuit court noted that the Department took custody of IP and transported him to Hamilton House for a forensic interview. When IP was asked about his bruises, IP curled into a fetal position, cried, and seemed very afraid. IP told the interviewer that his father had never hit him and that he had lied before. IP stated that he had gotten the bruises from falling out of a kayak.
On October 6, 2017, the circuit court entered a probable-cause order finding that emergency conditions existed and that it was necessary to remove IP from Phillips's custody.
On October 18, 2017, Phillips filed a motion to "shorten the time to respond." Phillips requested a copy of "the investigative file including all evidence, whether turned over to Central Registry or not as pertaining to the true finding on Kevin Phillips." Phillips also requested a transcript of the forensic interview of IP at Hamilton House. The circuit court refused to rule on the motion because Philips had not served IP's noncustodial mother, Fawn Henson, who was a party to the proceeding and representing herself.
On November 3, 2017, the circuit court held an adjudication hearing. Phillips testified that he was not sure how the bruises on IP's buttocks had occurred, that IP had been under the supervision of the Boys and Girls Club, his mother, and himself, and that he had not been aware of the bruising until he was shown pictures of IP's backside. Phillips testified that just a few days before the hotline report, IP had wrecked his bike and had fallen on rocks *503 and a canoe paddle during a float trip. Phillips also testified that once or twice a month he spanked IP with a belt or a paddle and that he could have caused some, but not all, of the bruises. Phillips denied telling family service worker Gorman that he used corporal punishment on IP on a regular basis, and Phillips denied that he previously stated that he had probably caused the bruising. Phillips testified that he had agreed to stop using corporal punishment when the case began. Phillips denied being "aggressive" toward Department personnel during the TDM meeting on August 25, though he admitted that he probably raised his voice and that after the meeting in the lobby, it would be fair to say that "things blew up." Phillips stated that he felt he had been bullied and falsely accused during the TDM meeting. Phillips explained that he tried to tell Department workers that he, his brother, and IP had gone on a fourteen-mile canoe trip and had capsized three times but "they wouldn't let me tell them."
Phillips testified that he had been investigated by the Department six times and that each report had been unsubstantiated. Phillips explained that one report of drug misuse and sexual abuse had been found true, but it was later overturned. Phillips attempted to have the order overturning the true finding admitted into evidence, and the Department objected that the order was not certified. The circuit court sustained the objection but noted that the opinion overturning the true finding of sexual abuse and substance misuse had already been discussed at the probable cause hearing. Phillips was allowed to proffer the contents of the order including that the administrative law judge ("ALJ") found that IP's mother was not a credible witness and that she had shown motive for fabricating the report of substance misuse and sexual abuse. In the order, the ALJ found that IP's answers seemed very coached and that he was likely lying about the abuse.
Henson, who was pro se at the hearing, cross-examined Phillips about when they had first seen IP's bruises. Phillips testified that he could not remember if Henson and he had met on August 23 after he had spoken with Gorman. Phillips could not recall whether he had actually seen the bruises or if they were successful in getting IP to pull down his pants so that they could see them. Phillips's attorney objected, asserting that Henson was being argumentative, and the court responded that "[y]our client seems to have a selective memory on what he wants to remember some specifics with DHS and can't remember a specific conversation with the mother of the child."
Officer Mark Mergen, a sergeant with the Greenwood Police Department, testified that on Thursday, August 24, Phillips told him that he had spanked IP on Monday and that he believed he had caused the bruises on IP's buttocks. Mergen explained that he did not clarify with Phillips whether he meant the immediately preceding Monday or two Mondays before, but he believed Phillips meant the immediately preceding Monday. Mergen testified that Phillips stated he did not believe he was "overzealous in his punishment."
Chrissy Thompson, a counselor who had worked with IP from time to time when IP was in kindergarten until he was removed from Phillips's custody, testified at the hearing. Thompson stated that Phillips used corporal punishment to address IP's behavioral issues. Thompson explained that up until the present school year, IP's school had used corporal punishment when disciplining IP. Thompson opined that corporal punishment was not appropriate for IP because
*504 it was used so much that it had no effect whatsoever. Because every week, I would see him and he would tell me, you know, when he would get in trouble or get in-school suspension, he would go home and I'd see him the next day and I'd say, you know, "what happened?" He'd tell me he got spanked.
Thompson testified that IP lied to her sometimes but that she could tell when he was not telling the truth.
Family service worker Gorman testified that she responded to the hotline report regarding IP. Gorman explained that on August 23, she went to IP's school where she observed the bruising and interviewed IP. That day after school, Gorman met Phillips at the Boys' and Girls' Club and questioned him about the bruises. Gorman testified that Phillips told her that he spanked IP with a belt, a paddle, and his hand and that he had spanked IP with a belt on "eclipse day," which was Monday, August 21. Phillips told her, "I would have to admit to that, then," when she showed him the pictures of the bruises on IP's bottom.
Henson also testified that she saw the bruises on IP's buttocks and upper thigh on Wednesday, August 23. Henson described how Phillips administers corporal punishment by raising his "whole entire body and swings ... at him with his whole body weight." Henson stated that it is normal for Phillips to spank IP twice a week.
Jerel Phillips, Kevin Phillips's brother, testified that he, IP, and Phillips went on a float trip from August 18 to August 20 and that IP fell several times during the trip. He testified that IP "slid on his butt" over rocks and down waterfalls. Jerel explained that the canoe capsized several times and that there were rocks just below the surface of the water.
On November 15, 2017, Phillips filed a motion to modify, vacate, and reopen the record in which he asserted that a miscarriage of justice had occurred. In his motion, Phillips argued that his original motion was deemed denied and that he never received the requested transcript of IP's recorded interview or "the investigative report of Bobbie Gorman which she claimed supported the true finding of abuse against Defendant." Phillips argued that the transcript was "exculpatory and contrary to the Department's conclusions[.]" Phillips admitted that the Department had supplied the video recording of the forensic interview, but that production of the transcript is "essential to make an informed and just ruling in the case at bar."
The Department responded that the investigator did not rely on a transcript of the interview with IP but had observed the actual interview. The Department also pointed out that a DVD recording of this interview had been provided to Phillips. The Department moved to strike portions of Phillips's motion because IP's statements in the interview at Hamilton House were not entered into evidence because the circuit court had previously deemed them inadmissible hearsay. The circuit court denied Phillips's motion.
On December 19, 2017, the circuit court entered an order finding IP dependent-neglected due to Phillips's physical abuse and parental unfitness. The court found that abuse is any nonaccidental physical injury, in the instant case spanking, and that "the definition of abuse specifically excludes physical discipline of a child when reasonable, moderate and inflicted by a parent. Ark. Code Ann § 9-27-303(C)(i)." The circuit court found that during the investigation of the report of severe bruising on IP's upper thigh, several bruises of differing ages were discovered on IP's buttocks.
*505 The circuit court noted that the family had a history with the Department but that none of the reports had been found true, except for one instance, and that finding was later overturned. The circuit court found this latest allegation true based on Phillips's acknowledgment that he spanked IP and that he could have caused some of the bruises. The circuit court also relied on Henson's description of Phillips's corporal punishment. The court acknowledged that Henson had been found by the Logan County Circuit Court to be an unfit parent, that she had previously interfered with the relationship between IP and his father, that she was $6,630.50 in arrears on her child-support obligation, and that she had failed to appear for a drug test. The circuit court also relied on IP's former school counselor's testimony that IP told her that his father frequently used corporal punishment. The court found that Phillips was "evasive and he lacked credibility" and that Phillips's "memory was poor when recalling facts which did not support his position but would improve significantly when recalling facts that supported his position."
On January 19, 2018, Phillips filed another motion to modify, vacate, and reopen the case, and he attached a transcript of IP's interview. Phillips contended in the motion that because the adjudication order was not filed until December 10, 2017, his November motion had not been ripe for consideration. Phillips argued that the forensic interviewer traumatized IP by trying to trick IP into saying that his father abused him. Phillips reasserted that the two excluded items of evidence-the interview transcript and the ALJ order overturning the true finding of sexual abuse and substance misuse-are essential to the case and are exculpatory. Without this evidence, Phillips argued, the circuit court cannot make an informed decision; thus, the circuit court should reopen the case and admit the evidence to complete the record. The circuit court denied the motion. Phillips timely filed his notice of appeal.
II. Standard of Review
This court reviews findings in dependency-neglect proceedings de novo, but we will not reverse the circuit court's findings unless they are clearly erroneous. Lamontagne v. Ark. Dep't of Human Servs. , 2010 Ark. 190, 366 S.W.3d 351. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, based on the entire evidence, is left with a definite and firm conviction that a mistake has been committed. Id. Adjudication hearings are held to determine whether the allegations in a petition are substantiated by the proof. Ark. Code Ann. § 9-27-327(a)(1) (Repl. 2015). Dependency-neglect allegations must be proved by a preponderance of the evidence. Worrell v. Ark. Dep't of Human Servs. , 2010 Ark. App. 671, 378 S.W.3d 258. The focus of an adjudication hearing is on the child, not the parent. Id. This court defers to the circuit court's evaluation of the credibility of witnesses. Id.
III. Points on Appeal
A. Sufficiency of the Evidence
Phillips challenges the sufficiency of the evidence to support the circuit court's finding that IP is dependent-neglected based on physical abuse and parental unfitness. In essence, he urges this court to give more weight to his and Jerel's testimony that IP's bruises were caused by events during a two-day float trip. We find no error in the circuit court's decision.
"Dependent-neglected juvenile" means any juvenile who is at substantial risk of serious harm as a result of acts or omissions *506 to the juvenile, a sibling, or another juvenile, including but not limited to, abuse, neglect, or parental unfitness. Ark. Code Ann. § 9-27-303(18)(A)(ii), (v) & (vi) (Supp. 2017). Section 9-27-303(3)(A) defines "abuse" in part as "any nonaccidental physical injury." Ark. Code Ann. § 9-27-303(3)(A)(v).
The circuit court found that Phillips caused the bruises to IP and that the injuries constituted abuse. To support this conclusion, the court found
[w]hen the juvenile was brought into care, he had numerous bruises on his buttocks, his lower back, and his upper leg.[1 ] The father caused the bruising to the juvenile's buttocks and lower back and the bruising was a non-accidental injury. The finding that the father caused the bruising was established by a. The father's admission, under oath, that he spanked the juvenile in the past and could have caused the bruising at issue by spanking the juvenile; b. The police officer's testimony that the father admitted to him that he could have caused at least some of the bruising at issue by spanking the juvenile; c. The mother's testimony that she witnessed the father spanking the juvenile on several occasions in the past. Including details about the way the juvenile was positioned during the spankings and the actions of the father in swinging his arm all the way back and hitting the child hard, with a belt; d. The counselor's testimony about the disclosures by the juvenile about being spanked by his father.
Phillips and his brother testified that IP sustained the bruises while falling out of a canoe and when he slid down the rocky riverbed on his bottom; however, the circuit court was not required to find this version of events persuasive. See Worrell , supra. Moreover, the circuit court found that Phillips lacked credibility and that Phillips's "memory was poor when recalling facts which did not support his position but would improve significantly when recalling facts that supported his position." The circuit court's finding that Phillips caused IP's bruises is supported by sufficient evidence; namely, that Phillips admitted he had likely caused the bruises by spanking IP. We are not left with a firm conviction that the circuit court erred in finding that Phillips caused IP's bruises. See Worrell , supra.
B. The Parent-Guardian Exception
We now turn to Phillips's alternative argument that if this court holds that the circuit court did not err in finding that IP's bruises are attributable to him, his conduct is included in the parent-guardian exception to "abuse" set forth in the Child Maltreatment Act. See Ark. Code Ann. § 12-18-103(3)(C)(i) (Supp. 2017). Phillips did not raise this issue below, and we are barred from addressing the Child Maltreatment Act's definition of abuse and its application to the instant case. A party cannot change the argument on appeal and is bound by the scope of the arguments made to the circuit court. McKinney v. Ark. Dep't of Human Servs. , 2017 Ark. App. 475, at 21, 527 S.W.3d 778, 791. We do not address arguments raised for the first time on appeal. Id.
Insofar as Phillips contends that the Department failed to present sufficient evidence that the corporal punishment he administered to IP was not within the definition of abuse, we affirm. Phillips also *507 argues that the circuit court impermissibly found that any corporal punishment constitutes abuse, and on that issue we also disagree and affirm.
In the order, the circuit court referred to Ark. Code Ann. § 9-27-303(3)(C)(i), which sets forth that "abuse" shall not include physical discipline of a child when it is reasonable and moderate and is inflicted by a parent or guardian for purposes of restraining or correcting the child. The circuit court also cited Ark. Code Ann. § 9-27-303(3)(C)(iii), which dictates that reasonable and moderate physical discipline inflicted by a parent or guardian shall not include any act that is likely to cause and that does cause injury more serious than transient pain or minor temporary marks.
Clearly the circuit court specifically considered the definitions of "abuse" and reasonable "physical discipline" as defined by Ark. Code Ann. § 9-27-303(3)(C)(i) and (iii) in the order, and sufficient evidence supports the circuit court's finding that Phillips's corporal punishment of IP constituted abuse. To support its determination, the circuit court found that IP's bruises were not transient, temporary, or accidental, and there was testimony and evidence that the bruise that initiated the call to the hotline was described as "huge" and "bigger than a grapefruit and almost looks like a square area. The bruise is brown, red, and yellow." In her investigation of that bruise, other bruises of varying ages were found. There was testimony from several sources that IP was frequently corporally punished. The circuit court heard unrefuted testimony that IP weighed approximately fifty pounds and that Phillips weighed around 200 pounds. The circuit court acknowledged Henson's history of interfering with Phillips's relationship with IP but found her testimony credible regarding the force with which Phillips spanked IP. The circuit court also found that Phillips's memory was selective and that he was evasive and lacked credibility. Even without Henson's testimony, the Department presented sufficient evidence that IP's bruises were not transient or temporary and that IP was frequently subjected to physical abuse.
Based on our holding above, we reject Phillips's argument that the circuit court found that spanking is per se abuse. Here, as we discuss above, the circuit court did not find that the spanking alone constitutes abuse. The circuit court considered the age, size, and condition of the child and the location of the injury and the frequency or recurrence of injuries when it determined whether the physical discipline was reasonable or moderate. See Ark. Code Ann. § 9-27-303(3)(C)(iv). We affirm.
C. Exclusion of the Department Administrative Opinion
On appeal, Phillips asserts that
[t]he ALJ opinion was excluded and not considered by the trial court because it was not "certified." Churchwell argued that it need not be certified because it was affixed with the Arkansas seal and signed by a state official (administrative law judge) who drafted the document originally, and his sealed and executed cover letter properly identified the document. This combination, Churchwell tried to explain, was self-authenticating according to the Rules of evidence.
We will not reverse a circuit court's ruling on admissibility of evidence absent a manifest abuse of discretion. Wilson v. Ark. Dep't of Human Servs. , 2015 Ark. App. 666, at 12, 476 S.W.3d 816, 824. Without any showing of prejudice, any judicial error as to the admissibility of evidence is harmless error and cannot be grounds for disturbing a circuit court's order. Id. ; Ark. R. Civ. P. 61.
*508 The exchange before the circuit court regarding the administrative order is as follows:
COUNSEL ( PHILLIPS ): Okay. I'm going to ask that this be marked as two, well, it's front and back, two pages front and back. It's the administrative decision and opinion from the administrative law judge, Brian Nichols, regarding those allegations.
COURT : Mrs. Hughes?
COUNSEL ( DEPARTMENT ): Your Honor, I'm objecting to this as hearsay. It's not certified.
COURT : Ms. Henson?
HENSON : I agree with the objection because IP's testimony was taken out of that hearing because they said that it was hearsay and they said that it was inadmissible.
COURT : Mrs. Hamilton?
ATTORNEY AD LITEM : Your Honor, I don't recall if I've seen that before. And to be honest, I don't know the process of certifying an administrative hearing.
COUNSEL ( PHILLIPS ): It's an order by an administrative law judge, your honor.
COURT : Is it a certified copy?
COUNSEL ( PHILLIPS ): I pulled it off their site. It's not certified, your Honor.
COURT : I'm going to sustain the objection.
COUNSEL ( PHILLIPS ): Your Honor, it's got the seal of the great state of Arkansas on it. Arkansas Department of Human Services-
COURT : Sir, Mr. Churchwell, if you want to proffer it, you can mark it as a proffered exhibit, but I'm not going to look at it.
Arkansas Rule of Evidence 902 regarding self-authenticating documents sets forth that a "public document under seal" does not require authentication to be admissible and that a "a document bearing the seal ... of any state" is such a document. Ark. R. Evid. 902(1). The administrative order here does not bear the state seal as Phillips contends. The letterhead of the letter attached to the order contains a copy of the state seal, and we do not have before us a ruling from the circuit court on whether the presence of a copy of the state seal contained in stationery letterhead constitutes a self-authenticating document when it is combined with the administrative order because Phillips, as he admits, did not make this argument below.
It appears from our review of the record that Phillips argued that the order bears the state seal; thus, it is self-authenticating. The circuit court ruled that the document is not "certified" and deemed it inadmissible. Limiting ourselves to the arguments made and ruled on below, we hold that the administrative order does not bear the state seal and is not self-authenticating; therefore, the circuit court did not err in refusing to admit the order into evidence as a self-authenticating document.
D. Motion to Modify, Vacate, and Reopen the Record
Phillips refers to the circuit court's denial of his motion to modify, vacate, and reopen the record in one sentence in the conclusion paragraph of his brief, as follows:
The ALJ opinion letter as well as the interrogation (DVD and transcript) should have been considered by the court as the best evidence, and based upon the Department's decision to release Sanders, and therefore not introduce the exculpatory evidence contained therein, the court considered only evidence that tended to support the adjudication.
*509 We do not address whether the circuit court erred by denying Phillips's motion because he has abandoned the issue on appeal. Phillips asserts that the circuit court should have granted his motion to modify, vacate, and reopen the record in a point heading but he offers no argument in that regard. See, e.g., Hale v. State , 343 Ark. 62, 31 S.W.3d 850 (2000) (declaring an argument abandoned on appeal when appellant mentioned it in the points on appeal but made no argument regarding it).
Affirmed.
Harrison and Klappenbach, JJ., agree.

Our review of the record does not show that there was any testimony or evidence that IP suffered bruises to his lower back. The circuit court's seeming factual error does not invalidate the court's finding regarding physical abuse.